UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

FIROOZ N. TABRIZI, M.D.,

                        Plaintiff,

   -v-                                     6:10-CV-1475

FAXTON–ST. LUKE'S HEALTHCARE;
WALEED ALBERT, M.D.; FREDERICK
GOLDBERG, M.D.; and BEHROOZ
EBRAHIMI FARD, M.D.,

                        Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:                                     OF COUNSEL:

PETER M. HOBAICA, LLC                  PETER M. HOBAICA, ESQ.
Attorney for Plaintiff
2045 Genesee Street
Utica, NY  13501

NAPIERSKI, VANDENBURGH, NAPIERSKI   KIMBERLY E. KENEALY, ESQ.
   & O'CONNOR, LLP                           ASA S. NEFF, ESQ.
Attorneys for Defendants
296 Washington Avenue Ext.
Albany, NY  12203

DAVID N. HURD
United States District Judge

## MEMORANDUM–DECISION and ORDER

## I. INTRODUCTION

     On December 8, 2010, plaintiff Dr. Firooz N. Tabrizi ("plaintiff" or "Tabrizi") filed this action against defendants Faxton–St. Luke's Healthcare ("Faxton"), Dr. Waleed Albert ("Albert"), Dr. Frederick Goldberg ("Goldberg"), and Dr. Behrooz Ebrahimi Fard ("Fard") (collectively "defendants").  Dkt. No. 1.  Plaintiff filed an amended complaint on March 25,

2011, and a second amended complaint on April 8, 2011, against the same four defendants. Dkt. Nos. 12, 14. Plaintiff brings a total of three causes of action: (1) violations of the Health Care Quality Improvement Act of 1986, 42 U.S.C. §§ 11101–11152, against all four defendants; (2) breach of contract against Faxton; and (3) intentional interference with contractual relationships against the three individually-named defendants.[1]

On April 11, 2011, defendants filed a motion to dismiss the second amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). Dkt. No. 15. Plaintiff opposes the motion. Dkt. Nos. 23, 24. On April 28, 2011, defendants filed a request to supplement their motion to dismiss. Dkt. No. 25. Oral argument was heard on May 13, 2011, in Utica, New York. Decision was reserved, and defendants were permitted to supplement their motion. Plaintiff responded in opposition to defendants' supplemental motion to dismiss, and defendants replied. Dkt. Nos. 29, 30.

## II. FACTUAL BACKGROUND

Unless otherwise noted, the following pertinent facts are taken from the second amended complaint and are assumed true for purposes of this motion to dismiss. The individually-named defendants were all employees at Faxton's hospital in Utica, New York, at times relevant to this action. Albert and Goldberg were the President and Vice President, respectively, of the medical staff at Faxton. Fard and plaintiff were staff psychiatrists in the hospital's psychiatric unit.

---

[1] Although plaintiff invokes 28 U.S.C. § 1332 in addition to 28 U.S.C. § 1331 for jurisdictional purposes, complete diversity is lacking as plaintiff, Faxton, Albert, and Goldberg are New York residents. Fard is allegedly a citizen and resident of Pakistan.

In December 2005 a patient, "JY," arrived in Faxton's intensive care unit and came under Tabrizi's care. After approximately one week in the intensive care and psychiatric units, JY was discharged "against medical advice." Dkt. No. 14, ¶ 13. Soon thereafter, Goldberg was contacted by the medical director at Excellus Blue Cross–Blue Shield, who expressed concerns over plaintiff's treatment of JY. In turn, Goldberg asked Fard to review JY's records and determine whether the care plaintiff provided was appropriate. On January 13, 2006, Albert notified plaintiff by letter that his clinical privileges had been suspended due to concerns raised regarding his treatment of JY.

A meeting of the Medical Executive Committee ("the Committee") was held on January 16, 2006. Plaintiff attended this meeting but was not permitted to be present while a "peer reviewer"—apparently Fard—provided testimony. Id. ¶¶ 20–22. On January 19, 2006, Goldberg informed Tabrizi by letter that the Committee found sufficient evidence to continue his suspension until the next meeting. The Committee next met on January 23, 2006, but Tabrizi was not permitted to attend. On January 26, 2006, Albert advised plaintiff in writing that his suspension would continue unless he agreed to certain limitations on his clinical privileges. Tabrizi then requested a fair hearing on his suspension. The hearing was conducted by a three-member panel over several days in December 2006 and January 2007. The panel concluded that the care Tabrizi provided to JY did not meet the minimum standard of care expected of a reasonably prudent psychiatrist. Plaintiff's suspension was confirmed by resolution of Faxton's Board of Directors on March 1, 2007. Kenealy Affirmation, Ex. E, Dkt. No. 21-3, 35–36.[2]

---

[2] The pagination corresponds to the page numbers as assigned on CM/ECF.

Tabrizi then filed a complaint with the New York Public Health Council pursuant to Public Health Law § 2801-b. The Public Health Council ultimately determined that the stated reasons for plaintiff's suspension were consistent with the Public Health Law. Plaintiff then initiated a proceeding pursuant to New York Public Health Law § 2801-c, seeking judicial review of the suspension. This action was dismissed in a bench decision by the Supreme Court, Oneida County, on September 30, 2008, and the dismissal was affirmed by the Appellate Division, Fourth Department, on October 2, 2009. Tabrizi v. Faxton–St. Luke's Health Care, 66 A.D.3d 1421, 1421–22 (N.Y. App. Div. 4th Dep't 2009). On January 19, 2010, leave to appeal was denied by the New York Court of Appeals. Tabrizi v. Faxton–St. Luke's Health Care, 13 N.Y.3d 717 (N.Y. 2010).

## III. DISCUSSION

In their supplemented motion to dismiss, defendants argue that: (1) plaintiff's first cause of action must be dismissed because the Health Care Quality Improvement Act of 1986 does not provide a private right of action; (2) plaintiff's third cause of action is barred by the statute of limitations; and (3) the second amended complaint must be dismissed in its entirety pursuant to the doctrines of res judicata and/or collateral estoppel.

### A. Motion to Dismiss Standard

To survive a 12(b)(6) motion to dismiss, the "[f]actual allegations must be enough to raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 127 S. Ct. 1955, 1965 (2007). Although a complaint need only contain "a short and plain statement of the claim showing the pleader is entitled to relief" (Fed. R. Civ. P. 8(a)(2)), more than mere conclusions are required. Indeed, "[w]hile legal conclusions can provide the

framework of a complaint, they must be supported by factual allegations." Ashcroft v. Iqbal, 556 U.S. 662, __, 129 S. Ct. 1937, 1950 (2009).

Dismissal is appropriate only where plaintiff has failed to provide some basis for the allegations that support the elements of his claims. See Twombly, 550 U.S. at 570, 127 S. Ct. at 1974 (requiring "only enough facts to state a claim to relief that is plausible on its face"). When considering a motion to dismiss, the complaint is to be construed liberally, and all reasonable inferences must be drawn in the plaintiff's favor. Chambers v. Time Warner, Inc., 282 F.3d 147, 152 (2d Cir. 2002). Where, as here, the parties attach pleadings from prior lawsuits to the motion to dismiss, a court may consider such documents without converting the motion to one for summary judgment. See Rothman v. Gregor, 220 F.3d 81, 92 (2d Cir. 2000) (taking judicial notice of a complaint attached to plaintiff's response to a motion to dismiss); 5-Star Mgmt., Inc. v. Rogers, 940 F. Supp. 512, 518 (E.D.N.Y. 1996) (taking judicial notice of pleadings attached to defendants' motion to dismiss).

### B. The Health Care Quality Improvement Act of 1986

In his first cause of action, plaintiff seeks a declaration that defendants violated various sections of the Health Care Quality Improvement Act of 1986 ("HCQIA"). Defendants assert that this cause of action must be dismissed because HCQIA does not provide a private cause of action through which a physician can seek relief for violations of that statute.

HCQIA confers immunity from damages on peer reviewers and persons involved with the reviewing body. See 42 U.S.C. § 11111(a)(1) (2006) (stating that such persons "shall not be liable in damages under any law of the United States or of any State . . . with respect to the action"). Plaintiff correctly notes that this provision has been interpreted by numerous courts to mean that HCQIA provides immunity from money damages but not immunity from

suit. See, e.g., Podgurski v. Grey, 189 F.3d 461 (2d Cir. 1999) (Table; unpublished opinion found at 1999 WL 568054, at *2) (suggesting, in dicta, that HCQIA provides immunity from damages but not immunity from suit); Singh v. Blue Cross/Blue Shield of Mass., Inc., 308 F.3d 25, 35 (1st Cir. 2002); Imperial v. Suburban Hosp. Ass'n, Inc., 37 F.3d 1026, 1031 (4th Cir. 1994); Manion v. Evans, 986 F.2d 1036, 1042 (6th Cir. 1993); Decker v. IHC Hosps., Inc., 982 F.2d 433, 436 (10th Cir. 1992).

However, none of the plaintiffs in Podgurski, Singh, Imperial, Manion, and Decker attempted to bring a cause of action for violations of HCQIA.  Instead, the defendants in these cases attempted to invoke HCQIA as an immunity from suit.  That HCQIA only grants immunity from monetary damages and not from suit entirely does not, in turn, indicate that HCQIA itself provides a private cause of action through which an aggrieved physician can pursue a remedy.[3]  Indeed, the First, Eighth, Tenth, and Eleventh Circuits have specifically held that HCQIA does not provide a private cause of action.  Singh, 308 F.3d at 45 n.18; Wayne v. Genesis Med. Ctr., 140 F.3d 1145, 1148 (8th Cir. 1998) (per curiam); Bok v. Mut. Assurance, Inc., 119 F.3d 927, 929 (11th Cir. 1997) (per curiam); Hancock v. Blue Cross–Blue Shield, Inc., 21 F.3d 373, 374–75 (10th Cir. 1994).  Plaintiff does not identify any cases where a private cause of action was found, either explicitly or implicitly, in HCQIA.

Although the Second Circuit has yet to address this issue, the above cases are persuasive and comport with the purposes of HCQIA.  HCQIA was enacted "to improve the quality of medical care by restricting the ability of physicians who have been found to be

---

[3] HCQIA therefore has a similar effect on peer reviewers as the Eleventh Amendment has on officials of the state.  While the Eleventh Amendment bars suits for money damages against state officials in their official capacities, claims for prospective injunctive relief are permitted.  Ex parte Young, 209 U.S. 123, 159–60, 28 S. Ct. 441, 453–54 (1908).  However, a plaintiff clearly cannot bring an independent cause of action under the Eleventh Amendment.

incompetent from repeating this malpractice by moving from state to state without discovery of such finding." Imperial, 37 F.3d at 1028; 42 U.S.C. § 11101. To accomplish this, HCQIA established a national reporting system and provides immunity from monetary damages for persons who participate in the peer reviewing of suspect physicians. 42 U.S.C. § 11101. Thus, HCQIA was intended to encourage the type of peer review that occurred in this case, not to benefit the physicians undergoing the review by providing them with a direct avenue for injunctive or declarative relief.

Therefore, while HCQIA does not prevent Tabrizi from bring suit against defendants for injunctive or declaratory relief, he cannot, as he attempts to do here, base such an action on violations of HCQIA as that statute does not provide a private cause of action. Accordingly, defendants' motion to dismiss the first cause of action will be granted.

### C. Statute of Limitations

In his third cause of action, plaintiff seeks monetary damages from Fard, Albert, and Goldberg for their alleged intentional interference with his contractual relationship with Faxton.[4] Defendants assert that this cause of action is barred by the statute of limitations.

Under New York law, a claim for tortious interference with a contract is governed by a three-year statute of limitations. Hwang v. Dunkin' Donuts, Inc., 840 F. Supp. 193, 196 (N.D.N.Y.) (McAvoy, C.J.), aff'd, 28 F.3d 103 (2d Cir. 1994); N.Y. C.P.L.R. § 214 (MCKINNEY 2011). This statutory period begins to run "when the contract in question has been breached." Hwang, 840 F. Supp. at 196.

---

[4] As this cause of action will be dismissed on statute of limitation grounds, it is unnecessary to consider whether it is also barred by HCQIA's aforementioned ban on seeking money damages from persons involved in the peer reviewing process.

In the second amended complaint, Tabrizi alleges that Fard, Albert, and Goldberg interfered with his contractual relationship with Faxton when they engaged in conduct that ultimately resulted in the suspension of his clinical privileges. Plaintiff's summary suspension commenced on January 13, 2006. Therefore, the statute of limitations began to run at that time and expired on January 13, 2009.

However, approximately two weeks after Tabrizi was suspended, the Committee decided to continue the suspension indefinitely unless he agreed to specific limitations on his clinical privileges. At the conclusion of a fair hearing in January 2007, a three-member panel confirmed the suspension. On March 1, 2007, Faxton's Board of Directors passed a resolution affirming plaintiff's suspension. Even assuming that any breach in plaintiff's contract with Faxton did not occur until the Board of Directors passed its resolution on March 1, 2007, Tabrizi's third cause of action is still untimely. The original complaint was not filed until December 8, 2010—four years and eleven months after the original summary suspension and three years and nine months after the resolution was passed affirming the suspension.

Accordingly, defendants' motion to dismiss the third cause of action will be granted.

### D. Remaining Cause of Action

As the first and third causes of action will be dismissed, the only remaining claim is the second cause of action for breach of contract against Faxton. This state law claim involves two New York residents. There is thus a lack of subject matter jurisdiction. Further, supplemental jurisdiction is declined. Accordingly, the second cause of action will be dismissed without prejudice.

## IV. CONCLUSION

Plaintiff cannot assert a claim for violations of HCQIA as that statute does not provide a private cause of action. Further, plaintiff's intentional interference with contractual relations cause of action is barred by the statute of limitations. Finally, there is a lack of subject matter jurisdiction over the remaining breach of contract claim against Faxton, and supplemental jurisdiction is declined.

Therefore, it is

ORDERED that

1. Defendants' motion to dismiss the second amended complaint (Dkt. No. 15) is GRANTED;

2. Plaintiff's first and third causes of action are DISMISSED with prejudice;

3. Defendants Dr. Waleed Albert, Dr. Frederick Goldberg, and Dr. Behrooz Ebrahimi Fard are DISMISSED; and

4. Plaintiff's second cause of action for breach of contract against defendant Faxton–St. Luke's Healthcare is DISMISSED without prejudice.

IT IS SO ORDERED.

United States District Judge

Dated: December 29, 2011
    Utica, New York.